UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MONIQUE LA VADA MCMATH,<br>    Plaintiff,<br>  v.<br>COMMISSIONER OF SOCIAL SECURITY,<br>    Defendant. | Case No. 17-cv-00988-MEJ<br><br>**ORDER RE: CROSS-MOTIONS FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 13, 15 |

## INTRODUCTION

Plaintiff Monique La Vada McMath (Plaintiff) brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Acting Commissioner of Social Security (Defendant), denying Plaintiff's claim for disability benefits. Pending before the Court are the parties' cross-motions for summary judgment. Pl.'s Mot., Dkt. No. 13; Def.'s Mot., Dkt. No. 15.[1] Pursuant to Civil Local Rule 16-5, the motions have been submitted on the papers without oral argument. Having carefully reviewed the parties' positions, the Administrative Record (AR), and the relevant legal authority, the Court hereby **DENIES** Plaintiff's motion and **GRANTS** Defendant's cross-motion for the reasons set forth below.

## BACKGROUND

Plaintiff was born on December 4, 1972. AR 91. She worked as a bilingual independent contractor facilitator, a transitional case manager, and a residential counselor before she stopped working entirely in 2013. AR 60-62.

---

[1] Plaintiff did not file a response to Defendant's cross-motion. *See* Dkt.

**SOCIAL SECURITY ADMINISTRATION PROCEEDINGS**

On January 7, 2013, Plaintiff filed a claim for Disability Insurance Benefits, alleging disability beginning on April 1, 2012. AR 11. On July 24, 2013, the Social Security Administration (SSA) denied Plaintiff's claim, finding that Plaintiff did not qualify for disability benefits. *Id.* Plaintiff subsequently filed a request for reconsideration, which was denied on February 5, 2014. *Id.* On April 4, 2014, Plaintiff requested a hearing before an Administrative Law Judge (ALJ). *Id.* ALJ Maxine R. Benmour conducted a hearing on July 29, 2015. AR 57. Plaintiff testified in person at the hearing and was represented by Dan McCaskell, a non-attorney representative. The ALJ also heard testimony from a Vocational Expert (VE). AR 83.

**A. Plaintiff's Testimony[2]**

In July 2013, Plaintiff stopped working because she realized that her anxiety was overwhelming. AR 64. She has feelings of anxiety every day, describing the feeling as "wanting to withdraw and be by myself." AR 65. Plaintiff has felt that way since childhood. *Id.* She suffers from anxiety attacks almost every day, making her feel as if she is "stuck in a ditch; like in a hole." *Id.* For about a year starting in 2006, Plaintiff received treatment for her anxiety and PTSD from Jessica Cole, M.D. AR 66. Since that time, Plaintiff has kept in contact with Dr. Cole "probably once a month" through email or telephone. *Id.* Plaintiff testified she was no longer taking medication for her anxiety or depression, but had taken medication for anxiety or depression in 2012 or 2013. AR 67. At the time of the hearing, Plaintiff was in therapy with Roberta Mineo, M.A.; she has seen Ms. Mineo weekly since 2010. AR 67-68.

Plaintiff has trouble sleeping at night due to anxiety and night terrors that occur a couple of nights a week. *Id.* To help her sleep, Plaintiff has taken calming tea. *Id.* Plaintiff rarely does any housework, but she tries to cook and clean by pacing herself. AR 75-76. Typically, Plaintiff spends her days reading, going for a walk, interacting with her stepchildren, and encouraging

---

[2] Plaintiff suffers from, and testified about, a number of impairments. Because she challenges only the ALJ's determination relating to her mental illness (Pl.'s Mot.), the Court only summarizes her testimony as it relates to that condition.

2

herself because she feels unable to do things she was once unable to do. AR 76-77.

Before she stopped working, Plaintiff also reduced her hours at work because she would forget where she was going, and she had to take some time to regroup after work before stepping into her home. AR 79. Her anxiety would go up when she dealt with clients and listened to their narratives. AR 80. Her employer accommodated Plaintiff in a number of ways, such as allowing her to go for a walk, sit in the quiet room when speaking to clients would set off her anxiety, take unscheduled breaks, and refrain from teaching a group class, as her coworkers would take over for her. AR 80-81.

Plaintiff also attended Santa Rosa Junior College to obtain her AA degree with a focus on social services. AR 81-83, 521, 524. There, she received a number of accommodations: she had a tutor and a note taker, recorded the lectures, tested in a quiet room, and utilized Dragon Dictate to help her type her papers. AR 81-83. Plaintiff did not testify she utilized these accommodations to aid impairments caused by her post traumatic stress disorder (PTSD); rather, it appears that at least some of these accommodations were necessitated by problems caused by extensive scarring to her hand. *See* AR 82 ("I was able to take a recorder into the class because I'm not good at taking – my hand, notetaking."); AR 83 (regarding Plaintiff's testimony about Dragon Dictate, Plaintiff's representative stated: "That helps me to understand your hand problems that you were having and how you were able to do that.").

**B.     Evidence of Record**

      1.     Roberta Latefa Mineo, M.A.

Ms. Mineo submitted a letter to the SSA supporting Plaintiff's disability application. AR 521-23. Plaintiff began attending therapy sessions with Ms. Mineo in 2010, after the Department of Rehabilitation (DOR) referred Plaintiff to Ms. Mineo for twelve weeks. AR 522. After those initial twelve weeks of therapy, Plaintiff continued to attend therapy with Ms. Mineo, but could only do so sporadically due to lack of income. *Id.*

Ms. Mineo opined Plaintiff showed signs of chronic major depression throughout her participation in individual and group therapy. *Id.* Plaintiff's depression was described as "severe,

3

but without psychotic features." *Id.* Plaintiff felt panicked and had difficulty sleeping, shortness of breath, poor appetite. *Id.* Additionally, Plaintiff frequently struggled with feelings of hopelessness and, at times, experienced thoughts of suicide. *Id.* Stressors such as her children's at-risk behavior and the surfacing of Plaintiff's childhood memories increased Plaintiff's symptoms. *Id.*

Ms. Mineo also opined that Plaintiff has spent the majority of her life "behind a mask" of normalcy, as she is frequently detached and has experienced some episodes of dissociation. *Id.* Ms. Mineo provided a history of Plaintiff's impairments stemming from early incidents in her life. AR 521. Such incidents included Plaintiff's father shooting and killing her mother when Plaintiff was one-and-a-half years old. *Id.* It is not certain whether Plaintiff witnessed the incident. *Id.* Plaintiff's father remarried a woman who was "consistently emotionally and physically abusive" toward Plaintiff. *Id.* Plaintiff's step-mother placed Plaintiff's hands on a hot stove as punishment, resulting in second and third degree burns. *Id.* Plaintiff now has scars on her hands. *Id.* Ms. Mineo opined that Plaintiff's "ability to trust and form safe attachments has been severely impacted by these early incidents," and "[e]ffects of PTSD remain with her to date." *Id.*

Plaintiff was diagnosed with a learning disability in first grade. *Id.* Ms. Mineo also provided a history of Plaintiff's employment. *Id.* Plaintiff worked in a variety of human services positions, including as support staff in a residential program for developmentally delayed adults, a residential treatment program for emotionally disturbed deaf youth, a victim advocate for YWCA's safe house, and a one-on-one aid for children with special needs. *Id.* Plaintiff's longest duration of employment was two years. *Id.*

Ms. Mineo related that it had been increasingly difficult for Plaintiff to attend and remain present for "other people's disturbing stories and stressors." AR 522. Ms. Mineo opined that (1) Plaintiff's "ability to sustain concentration is impaired to the extent that it would affect her participation in a work setting" and (2) Plaintiff would have difficulty adapting to the demands of a new social/work environment. AR 523. Ms. Mineo does not opine Plaintiff's impairments prevent her entirely from working.

4

### 2. Patricia Stengle

Patricia Stengle is a DOR Senior Vocational Rehabilitation Counselor who began working with Plaintiff in April 2007. AR 524; *see also* AR 667 (3/20/2013 Case Note), AR 663 (5/15/2013 Case Note). Ms. Stengle explained that the DOR assisted Plaintiff with two vocational certificates and in her pursuit to earn her AA degree. AR 524. The DOR also provided Plaintiff with "numerous accommodations and helped her with job placement." *Id.*

On May 15, 2013, Plaintiff wanted to take a break from school and from her job search. AR 663. Ms. Stengle noted that Plaintiff was unable to identify any particular stressors in her life, and in fact appeared to have "less stress in her life now than in the past." *Id.* For example, Plaintiff's children were out of the house, she lived with her boyfriend, she was doing well in school, and she was working at West County Community Service's Russian River Employment Center as a peer counselor. *Id.*; *but see* AR 667 (after meeting with Plaintiff, rehabilitation counselor Lauren Morales agreed that Plaintiff "has been declining in mental health and has been unable to participate in services such as job placement. [She] reports that she has had issues with her mental health status and with her son who has been in and out of jail for several years now. The issues she has faced at home have caused her to have depression, exacerbate her carpal tunnel, and caused her to do poorly in school. . . .")

Plaintiff reported that listening to stories of her clients with mental issues had become stressful for her and was worsening her PTSD symptoms. AR 524. Plaintiff's supervisors were very satisfied with her work performance, and upon Plaintiff's request, they agreed to reduce her work hours. *Id.*

Ms. Stengle stated that Plaintiff "looks around and sees other people with backgrounds similar to hers receiving Social Security benefits. She somehow feels that she too is entitled to these benefits." *Id.* Ms. Stengle tried to discourage Plaintiff from applying for disability benefits, as Ms. Stengle opined Plaintiff was "very capable of working as long as she has certain job accommodations." *Id.*

3. <u>Jay L. Danzig, Ph.D.</u>

Jay Danzig is a clinical psychologist who performed a psychological evaluation of Plaintiff on January 22, 2013. AR 525-532. Dr. Danzig found Plaintiff scored in the 50th percentile in reading comprehension, and would need to have some subject-specific preparation to handle the specialized vocabulary of any new job area; Plaintiff scored in the 5th percentile for expressive vocabulary, suggesting a limited ability by which to communicate with others in an articulate or descriptive manner, but she demonstrated adequate conversational capacities during the clinical interview; Plaintiff's abstract verbal reasoning performance was at the 15th percentile with poor accuracy, she often became confused, arrived at illogical conclusions when asked to deal with complicated written materials, and would benefit most from an on-the-job training approach which utilizes rote, repetition, and direct role modeling as learning modalities. AR 525-526. In contrast to her poor verbal skills, Plaintiff scored in the 80th percentile with almost perfect accuracy in her ability to work with detailed clerical material. AR 526 ("Her clerical speed and accuracy represents a useful aptitude in terms of her moving into jobs which require her to work with entry level clerical paperwork under a time pressure."). Dr. Danzig reviewed a 2002 assessment of Plaintiff's performance and observed her "nonverbal spatial reasoning abilities as well as her nonverbal concept reasoning potentials represent her most important problem solving strengths. This represents an important constellation of strengths in terms of her moving into an entry level mechanical or technical related occupation[]." AR 526-27. However, based on Plaintiff's report that she suffered from bilateral carpal tunnel syndrome and a pinched nerve in her right shoulder, Dr. Danzig opined the feasibility of Plaintiff pursuing competitive employment in these areas in the immediate future was in question, and recommended she be evaluated by Social Security for benefits. AR 527; *see also* AR 532.

Dr. Danzig noted Plaintiff's thought processes were easily followed and moderately concrete in quality; he observed no psychotic processes. AR 528. The personality findings were deemed not valid because "there is an extremely high probability that [Plaintiff] endorsed items inaccurately by reporting symptoms and behaviors that are rarely seen even in hospitalized

6

psychiatric patients." AR 527. He observed, "It is quite possible that Ms. Mc Math believes that she needs to exaggerate health and psychological issues in order to be eligible for services. . . . In my opinion . . . she is selectively reporting information and as such is not forthcoming." AR 530.

Dr. Danzig opined that Plaintiff's test results "are associated with individuals whose frustration tolerance for handling interpersonal demands is significantly impaired. In everyday life, others will find [her] to be less than tactful, diplomatic, or empathetic . . . . Even in benign work situations, she has a basic wariness of others, a wariness that can reach paranoid proportions when others make even a modicum of demands upon her. These findings clearly contraindicate her returning to human services or any job which requires her to work in a close interdependent manner with others." AR 532.

### 4    Gerald D. Jacobs, MFT

Plaintiff's primary care physician, Jessica Cole, referred Plaintiff to Mr. Jacobs when Plaintiff asked Dr. Cole "to write a letter to her employer excusing her from work due to her . . . being triggered by her clients who have trauma." AR 513. Dr. Cole referred Plaintiff to Mr. Jacobs because Dr. Cole "is not treating [Plaintiff] for PTSD." *Id.* Mr. Jacobs noted Plaintiff was "mainly interested in getting a doctor to excuse her from working, though her employers have given her no negative feedback about her work." *Id.*

On May 9, 2013, Mr. Jacobs completed an Initial Adult Assessment of Plaintiff. AR 513-20. He diagnosed Plaintiff with PTSD and disorder of written expression; he noted a number of symptoms which "cause clinically significant distress and impairment in social, occupational, and other important areas of functioning." AR 517. He noted "mild" and "moderate" problems in a number of categories relating to employment and mental health, but no severe problems. AR 518. He opined Plaintiff had "significant strengths and relatively few obvious functional impairment," but that without treatment, Plaintiff "risk[ed] relapsing on substances, losing support system, homelessness, [and] losing her children." AR 520. He referred Plaintiff back to the DOR "where they will work with her on disability or finding a less stressful work situation." *Id.* Plaintiff did not want Mr. Jacob's services at that point in time. *Id.*

### 5. Santa Rosa Memorial Hospital DBT Intensive Outpatient Program

Plaintiff requested to be evaluated by the Santa Rosa Memorial Hospital Outpatient Behavioral Health Services program in October 2013; she complained of PTSD, depression, and anxiety. AR 548. Her intake form, completed the following day, showed that Plaintiff was anxious, depressed, and sad, and that her memory was impaired. AR 550. The preliminary diagnosis showed PTSD and major depressive disorder, severe, recurrent. AR 552; *see also* AR 559. The initial treatment plan addressed symptoms for severe depression, poor sleep with nightmares, poor energy, inability to work, poor appetite and concentration, and easily triggered PTSD. AR 553. Plaintiff was scheduled to return to the program twice weekly for twelve weeks. *Id.*

During her initial assessment on October 9, 2013, Plaintiff's affect was anxious, her mood was depressed, her thought process was clear, linear, and goal directed. AR 559. She had suicidal ideation but did not plan or intend to commit suicide, as she would not do that to her children. *Id.* Plaintiff also had appropriate thought content, had good insight and memory, and fair judgment. *Id.* The evaluator noted that Plaintiff was "clearly" suffering from depression, anxiety, and symptoms of PTSD. *Id.* Plaintiff wanted to refrain from taking psychiatric medication, but she was open-minded to taking medication in the near future. *Id.*

For multiple group sessions in October 2013, Plaintiff exhibited no impairment in cognitive function and showed normal thought process, appropriate perception, appropriate affect/mood, and cooperative behavior. AR 622-24. She was depressed and quiet during an October 16, 2013 group session, but she remained engaged and attentive. AR 625-27. During a group session on October 30, 2013, Plaintiff presented as anxious but engaged. AR 621.

In a November 4, 2013 group session, Plaintiff exhibited no impairment and concrete thought process, appropriate perception, cooperative behavior, and anxious affect/mood. AR 544. Plaintiff also engaged in group discussion of concepts and application by making eye contact with peers and staff, and appeared tearful when another person did not role play during a portion of the session. *Id.* However, Plaintiff was able to contain herself. *Id.* On November 6, 2013, Plaintiff

8

was active and engaged during group session but at times appeared depressed and overwhelmed. AR 543, 602. On November 13, 2013, Plaintiff was quiet in group, appeared fatigued, and did not exhibit impairment in cognitive function; she was easily distracted but had normal thought process, appropriate perception, cooperative behavior, and appropriate but depressed and anxious affect/mood. AR 541, 600. In a November 18, 2013 group session, Plaintiff was quiet and appeared depressed, but during a different session on the same day, Plaintiff was "alive in group," participating and sharing her homework. AR 540, 599. Plaintiff exhibited no impairment in cognitive function and exhibited normal thought process, appropriate perception, cooperative behavior, and appropriate but anxious mood. *Id.* On November 20, 2013, Plaintiff engaged slightly more and demonstrated marginal attention. AR 539. In addition, Plaintiff was quiet and appeared anxious and depressed. *Id.*

During group sessions in December 2013, Plaintiff was depressed and anxious, shared minimally, and was tearful. AR 583, 587. During a group session on December 4, 2013, Plaintiff exhibited no impairment in cognitive function, but she had a thought process of hopelessness and appeared depressed and sad. AR 587. On December 9, 2013, Plaintiff was engaged, attentive, and quiet, but she was also anxious and depressed. AR 586. On December 11, 2013, Plaintiff had no impairment in her cognitive function, had a normal thought process, was cooperative, was engaged and attentive, but she continued to demonstrate signs of depression. AR 585. On December 20, 2013, Plaintiff was calm and had an even affect, her memory was intact, her judgment and insight were fair, and she was less depressed. AR 590.

In another group session, Plaintiff was dissociative, had a thought process of hopelessness, had an appropriate perception, had a cooperative behavior, and her affect/mood were depressed and anxious. AR 583.

In July 2014 and September 2014, Plaintiff was alert and her mood and affect were appropriate during a physical examination. AR 1256, 1475.

6. David Gross, M.D.

Dr. Gross is the psychological State reviewing physician who assessed Plaintiff's

application for disability benefits at the Initial level. AR 91-104. Dr. Gross considered the medical and other information received and Plaintiff's age, education, training, and work experience to determine how Plaintiff's conditions affected her ability to work. AR 104. He determined that Plaintiff's condition should permit sustained public, simple, and complex work. AR 96-97. He opined that Plaintiff's restriction of activities of daily living (ADLs) and difficulties in maintaining social functioning, concentration, persistence, or pace were mild. AR 97. Dr. Gross noted Plaintiff attended community college part-time and counseled teens part-time. AR 100. He found no evidence of cognitive issues. *Id.*

Dr. Gross opined Plaintiff may have some difficulties with consistent work. AR 100-01. Plaintiff's Mental Residual Functional Capacity Assessment showed that Plaintiff may have some difficulties with consistency due to self-reported PTSD-like symptoms, but the overall evidence showed Plaintiff's willingness to attend and persist at desired goals. AR 101. Dr. Gross determined Plaintiff appeared capable of adequate social interaction and appeared capable of adapting. *Id.* Plaintiff demonstrated a maximum sustained work capability of light. AR 103. Dr. Gross recognized that the medical evidence supported Plaintiff's allegations but not to the level of total disability. *Id.* Dr. Gross acknowledged that Plaintiff may be anxious and depressed at times, but the records showed that Plaintiff was able to think, communicate, and act in her own interest (AR 103-04), as well as maintain pace, persistence, and concentration needed to perform work over a forty-hour week (AR 104). Evidence showed that Plaintiff was able to adjust to ordinary emotional stresses, get along with others, do her regular activities, care for her own daily personal needs, and remember and follow simple and complex instructions. AR 104.

Additionally, Dr. Gross opined Plaintiff has "the ability to maintain the pace, persistence, and concentration needed to perform work, with appropriate breaks, over a forty-hour week." *Id.* While Plaintiff has some limitations to performing work related activities and may not be capable of performing the type of work she had done in the past, she is able to do work that is less demanding. *Id.* Ultimately, Dr. Gross determined that Plaintiff was not disabled. AR 103.

7. <u>Tawnya Brode, Psy. D.</u>

Dr. Brode is the State agency reviewing physician who assessed Plaintiff's application for disability benefits at the Reconsideration level. AR 19, 106. Dr. Brode opined Plaintiff had some moderate limitations. AR 118-19. While Plaintiff's restriction of activities of daily living and difficulties in maintaining social functioning were mild, her difficulties in concentration, persistence, or pace were moderate. AR 115. Dr. Brode acknowledged Plaintiff attended community college part-time and counseled troubled teens part-time, without evidence of cognitive issues. AR 118. As to Plaintiff's sustained concentration and persistence limitations, Dr. Brode found Plaintiff may have some difficulties with consistent work for anything more than semi-skilled (3-4 step) tasks, as she has PTSD symptoms while counseling troubled teens, and a history of depression, anxiety, and abuse as a child. AR 118-19.

Plaintiff was not significantly limited in her ability to carry out very short and simple instructions, detailed instructions, maintain attention and concentration for extended periods, sustain an ordinary routine without special supervision, and make simple work-related decisions. AR 118. On the other hand, Dr. Brode determined that Plaintiff's ability to perform activities within a schedule, maintain regular attendance, be punctual within customary tolerance, work in coordination with or in proximity to others without being distracted by them, complete a normal workday and work week without interruption from psychologically based symptoms, and perform at a consistent pace without an unreasonable number and length of rest periods were moderately limited. *Id.* With regards to Plaintiff's social interaction limitations, Plaintiff may have some difficulties with consistent work due to PTSD symptoms, and a history of depression, anxiety, and abuse as a child. AR 119.

**C.  The ALJ's Findings**

Plaintiff has participated in a number of assessments and has attended group therapy sessions. The regulations promulgated by the Commissioner of Social Security provide for a five-

step sequential analysis to determine whether a Social Security claimant is disabled.[3] 20 C.F.R. § 404.1520. The sequential inquiry is terminated when "a question is answered affirmatively or negatively in such a way that a decision can be made that a claimant is or is not disabled." *Pitzer v. Sullivan*, 908 F.2d 502, 504 (9th Cir. 1990). During the first four steps of this sequential inquiry, the claimant bears the burden of proof to demonstrate disability. *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009). At step five, the burden shifts to the Commissioner "to show that the claimant can do other kinds of work." *Id.* (quoting *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988)).

The ALJ must first determine whether the claimant is performing "substantial gainful activity," which would mandate that the claimant be found not disabled regardless of medical condition, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(i), (b). Here, the ALJ determined that Plaintiff had not performed substantial gainful activity since April 1, 2012. AR 13.

At step two, the ALJ must determine, based on medical findings, whether the claimant has a "severe" impairment or combination of impairments as defined by the Social Security Act. 20 C.F.R. § 404.1520(a)(4)(ii). If no severe impairment is found, the claimant is not disabled. 20 C.F.R. § 404.1520(c). Here, the ALJ determined that Plaintiff had the following severe impairments: repetitive strain injury, pulmonary sarcoidosis, status post hand burns since age six, depression, and PTSD. AR 13.

If the ALJ determines that the claimant has a severe impairment, the process proceeds to the third step, where the ALJ must determine whether the claimant has an impairment or combination of impairments that meet or equals an impairment listed in 20 C.F.R. Part 404, Subpt. P, App. 1 (the "Listing of Impairments"). 20 C.F.R. § 404.1520(a)(4)(iii). If a claimant's impairment either meets the listed criteria for the diagnosis or is medically equivalent to the

---

[3] Disability is "the inability to engage in any substantial gainful activity" because of a medical impairment which can result in death or "which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

12

criteria of the diagnosis, he is conclusively presumed to be disabled, without considering age, education and work experience. 20 C.F.R. § 404.1520(d). Here, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that meets the listings. AR 13.

Before proceeding to step four, the ALJ must determine the claimant's Residual Function Capacity (RFC). 20 C.F.R. § 404.1520(e). RFC refers to what an individual can do in a work setting, despite mental or physical limitations caused by impairments or related symptoms. 20 C.F.R. § 404.1545(a)(1). In assessing an individual's RFC, the ALJ must consider all of the claimant's medically determinable impairments, including the medically determinable impairments that are nonsevere. 20 C.F.R. § 404.1545(e). Here, the ALJ determined that Plaintiff has the RFC to perform light work as defined by 20 CFR §§ 404.1567(b) and 416.967(b). AR 15. Specifically, Plaintiff can lift and/or carry 10 pounds frequently, 20 pounds occasionally, sit for 6 hours out of an 8-hour workday, stand and/or walk for 6 hours out of an 8-hour workday, and frequently handle bilaterally. AR 15-16. She must also avoid concentrated exposure to fumes, odors, dusts, gases, and poor ventilation; and she is limited to simple, repetitive tasks and to occasional contact with co-workers and the public. AR 16.

The fourth step of the evaluation process requires that the ALJ determine whether the claimant's RFC is sufficient to perform past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv); 404.1520(f). Past relevant work is work performed within the past 15 years that was substantial gainful activity, and that lasted long enough for the claimant to learn to do it. 20 C.F.R. § 404.1560(b)(1). If the claimant has the RFC to do his past relevant work, the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(iv). Here, the ALJ determined that Plaintiff could not perform past relevant work as a residential counselor and school adjustment counselor. AR 21.

In the fifth step of the analysis, the burden shifts to the Commissioner to prove that there are other jobs existing in significant numbers in the national economy which the claimant can perform consistent with the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g); 404.1560(c). The Commissioner can meet this burden by relying on the testimony of a VE or by reference to the Medical-Vocational Guidelines at 20 C.F.R. pt. 404, Subpt. P, App. 2.

13

*Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006). Here, based on the testimony of the VE, Plaintiff's age, education, work experience, and RFC, the ALJ determined there are jobs that exist in significant numbers in the national economy that the claimant can perform pursuant to 20 CFR §§ 404.1569, 404.1569(a), 416.969, and 416.969(a) such as marker, retail, housekeeping cleaner, and router. AR 21-22.

### D. ALJ's Decision and Plaintiff's Appeal

On November 13, 2015, the ALJ issued an unfavorable decision finding that Plaintiff was not disabled. AR 23. This decision became final when the Appeals Council declined to review it on December 23, 2015. AR 1-3. Having exhausted all administrative remedies, Plaintiff commenced this action for judicial review pursuant to 42 U.S.C. § 405(g). On July 7, 2017, Plaintiff filed the present Motion for Summary Judgment. On August 9, 2017, Defendant filed a Cross-Motion for Summary Judgment.

## LEGAL STANDARD

This Court has jurisdiction to review final decisions of the Commissioner pursuant to 42 U.S.C. § 405(g). The ALJ's decision must be affirmed if the findings are "supported by substantial evidence and if the [ALJ] applied the correct legal standards." *Holohan v. Massanari*, 246 F.3d 1195, 1201 (9th Cir. 2001) (citation omitted). "Substantial evidence means more than a scintilla but less than a preponderance" of evidence that "a reasonable person might accept as adequate to support a conclusion." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (quoting *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995)). The court must consider the administrative record as a whole, weighing the evidence that both supports and detracts from the ALJ's conclusion. *McAllister v. Sullivan*, 888 F.2d 599, 602 (9th Cir. 1989). However, "where the evidence is susceptible to more than one rational interpretation," the court must uphold the ALJ's decision. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). Determinations of credibility, resolution of conflicts in medical testimony, and all other ambiguities are to be resolved by the ALJ. *Id.*

Additionally, the harmless error rule applies where substantial evidence otherwise supports

14

the ALJ's decision. *Curry v. Sullivan*, 925 F.2d 1127, 1131 (9th Cir. 1990). A court may not reverse an ALJ's decision on account of an error that is harmless. *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055-56 (9th Cir. 2006)). "'[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination.'" *Id.* (quoting *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009)).

**DISCUSSION**

The parties contest one issue: whether the ALJ properly rejected Roberta Mineo's opinion. *See* Pl.'s Mot. at 5; *see also* Opp'n at 2. Plaintiff argues the ALJ's final decision failed to adequately consider the record as a whole and failed to articulate germane reasons supported by substantial medical evidence for rejecting Ms. Mineo's opinion. *See* Pl.'s Mot. at 6-7. Defendant argues the ALJ properly rejected Ms. Mineo's opinion, as the ALJ's decision was supported by substantial evidence, and it was free from legal error. *See* Opp'n at 2-8. The Court addresses the sufficiency of each of the reasons articulated by the ALJ.

**A. Standard Applicable to Evaluating Ms. Mineo's Opinion**

The ALJ rejected Ms. Mineo's opinion and gave little weight to the statement, as "an opinion that is not from an acceptable medical source is not entitled to be given the same weight as a qualifying medical source opinion." AR 20. Ms. Mineo is Plaintiff's therapist but she is not a medical doctor; it is undisputed that she is not considered an "acceptable medical source." *See* Pl.'s Mot. at 6. Ms. Mineo may not be an "acceptable medical source," but is nevertheless an "other source." *See also* 20 C.F.R. §§ 404.1513(a)(3), 416.913(d); *see also Stephens v. Colvin*, 2014 WL 6982680, at *4 (N.D. Cal. Dec 9, 2014). "Other sources" are not entitled to the same deference afforded to "acceptable medical sources." *Molina*, 674 F.3d at 1111. The ALJ thus may accord opinions from "other sources" less weight than opinions from acceptable medical sources. *Stephens*, 2014 WL 6982680, at *4 (citing *Gomez v. Chater*, 74 F.3d 967, 970-71 (9th Cir. 1996)).

However, lay witness testimony may not be disregarded without comment; to do so, an

15

ALJ "'must give reasons that are germane to each witness.'" *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir.1996) (quoting *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993)); *see Molina*, 674 F.3d at 1111; *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005) ("An ALJ need only give germane reasons for discrediting the testimony of lay witnesses.").

**B.      Analysis**

The ALJ articulated the following reasons for disregarding Ms. Mineo's testimony: she did not provide an explanation for her assessment or any specific functional limitation that prevented Plaintiff from working; her opinion is inconsistent with the objective findings that show mild to moderate findings; and her opinion is inconsistent with the claimant's admitted activities. AR 20.

        1.    <u>Explanation for Assessment or Functional Limitations</u>

The ALJ rejected Ms. Mineo's opinion because Ms. Mineo did not opine Plaintiff suffers from specific functional limitations that prevent her from working. AR 20. This is an accurate characterization of Ms. Mineo's opinion. *See* AR 521-23. Ms. Mineo chronicles Plaintiff's learning disability and impairments, including PTSD, the effects of which remain with Plaintiff to this date. AR 521. She reports that Plaintiff has "shown signs of chronic Major Depression[, which] has been severe, but without psychotic features. Anxious thoughts make sleep difficult. At times she feels panicked and has shortness of breath." AR 522. She explains Plaintiff is "frequently detached and experiences some episodes of dissociation." *Id.* But Ms. Mineo does not state the frequency of Plaintiff's impairments nor the impact of those impairments on any aspect of her ability to work. In discussing Plaintiff's prognosis, Ms. Mineo opines that Plaintiff's "ability to sustain concentration is impaired to the extent that it would affect her participation in a work setting" and that she "would have difficulty to adapting to the demands of a new [social/work] environment." AR 523. Ms. Mineo does not explain whether she finds Plaintiff's ability to sustain concentration is "severely," "moderately," or merely "mildly" impaired—only that it is "impaired to the extent it would affect her participation." She similarly does not opine about the level of difficulty Plaintiff would have in adapting to a new work environment. Ms. Mineo does not opine Plaintiff's conditions prevent her from performing any type of work.

16

Ms. Mineo's statement is insufficiently detailed to allow the ALJ to determine whether Plaintiff is disabled. "Other source" opinions such as Ms. Mineo's "must be complete and detailed enough to allow [the ALJ] to make a determination or decision about whether [a claimant] is disabled." 20 C.F.R. § 404.1513(e). Plaintiff does not argue this was not a germane reason for rejecting the opinion in her Motion, nor does she respond to Defendant's Opposition on this point. *See* Mot. The undersigned finds the ALJ's first reason for giving little weight to Ms. Mineo's letter is germane.

2. Inconsistency with Objective Findings

The ALJ also rejected Ms. Mineo's opinion because it was inconsistent with the objective findings, which showed mild to moderate impairments. AR 20. Inconsistency with medical evidence is a germane reason for rejecting the opinion of a non-medical source. *Bayliss*, 427 F.3d at 1218 (citing *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001)).

The ALJ gave significant weight to the opinions of the two SSA reviewing physicians, Drs. Gross and Brode. AR 19. At the initial level, Dr. Gross found the record only supported mild limitations. AR 97. On reconsideration, Dr. Brode re-reviewed the claim with the benefits of Dr. Danzig's January 22, 2013 evaluation and found Plaintiff's presentation supported mild to "wnl" [within normal limits] impairments. AR 114. Dr. Brode confirmed Plaintiff had affective disorders, anxiety-related disorders, and personality disorders, but found the record showed these only caused mild restrictions in ADLs, mild difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence or pace. AR 115.

In addition, the ALJ reviewed Plaintiff's psychological records from January 8, 2013 through December 16, 2013; the ALJ summarized multiple unremarkable mental status examinations, the results of Dr. Danzig's evaluation, and Plaintiff's decision to forego psychiatric treatment because she could not treat her mental illness with natural remedies. AR 18-19; *see also* AR 20 ("In this case, the mental status examinations were mostly within normal limits; they did not document claimant's experiencing suicidal ideation, obsessional rituals, serious impairment in social functioning, or conflicts with peers or coworkers. In fact, claimant lives with family,

17

engages in [ADLs], and even holds down a job and takes classes."). The ALJ also noted that Dr. Danzig's evaluation could not be used for diagnostic purposes because, he opined, Plaintiff may have endorsed testing items inaccurately because she believes she needs to exaggerate health and psychological issues to receive services. AR 18.

Plaintiff argues the ALJ erred by discussing only the evidence that tended to support denial of benefits. Pl.'s Mot. at 6. She illustrates her point by arguing that her symptoms were not always within normal limits, and that she appeared depressed or anxious during certain group sessions; presented as tearful during one session; and presented as easily distracted and fatigued in another. *Id.* The ALJ did not find Plaintiff was free of symptoms; on the contrary, she found Plaintiff suffered from PTSD and depression and experienced mild to moderate limitations in her ADLs; social functioning; and concentration, persistence, or pace. AR 13-15. The ALJ did not, however, find that the record supported limitations greater than the mild or moderate impairments described by Drs. Gross and Brode. That Plaintiff exhibited symptoms consistent with her diagnoses during group sessions does not undermine the ALJ's conclusions, nor those of Drs. Gross and Brode. The ALJ's second reason for discounting Ms. Mineo's opinion was germane.

3. <u>Inconsistency with admitted activities</u>

Finally, the ALJ discounted Ms. Mineo's opinion because it was inconsistent with Plaintiff's admitted activities of daily living. AR 20. "The Social Security Act does not require that claimants be utterly incapacitated to be eligible for benefits, and many home activities may not be easily transferable to a work environment where it might be impossible to rest periodically or take medication." *See Smolen*, 80 F.3d at 1284 n.7. However, "[w]hile a claimant need not vegetate in a dark room in order to be eligible for benefits, the ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting." *Molina*, 674 F.3d at 1111 (internal quotation marks and citations omitted).

Here, the ALJ listed Plaintiff's admittedly "somewhat normal level of daily activity and interaction": interacting with her stepchildren, living with her boyfriend and his children, going for

18

walks, and reading; going to class, driving, going out alone, using public transportation; shopping in stores and by computer, preparing meals, doing light cleaning, doing yoga, playing light sports; research writing, writing poetry, reading; going to lunch with friends; spending time with others one to two times a day; and being busy working and going to school. AR 16-17; *see also* AR 14 (finding Plaintiff had "mild" limitations in ADLs); AR 15 (listing ADLs, including Plaintiff's work as a peer counselor, and her supervisor's satisfaction with her performance). The ALJ did not discredit Plaintiff's testimony because she occasionally engaged in social outings or went for walks; the ALJ instead noted that "the physical and mental capabilities requisite to performing many of the tasks described above, as well as the social interactions, replicate those necessary for obtaining and maintaining employment." AR 17. While the undersigned may have weighed this evidence differently, the ALJ's conclusion is supported by more than a scintilla of evidence, and the undersigned cannot find the ALJ erred in this assessment.[4] *See Garrison*, 759 F.3d at 1009-10.

Plaintiff also argues the ALJ erred in failing to address Drs. Gross and Brode opined Plaintiff may have some difficulties with consistent work. Opp'n at 7-8. The ALJ gave significant weight to the opinions of Drs. Gross and Brode, and adopted their assessments of Plaintiff's limitations, including the moderate impairments Dr. Brode assessed in Plaintiff's ability to maintain sustained concentration and persistence. AR 21; *see* AR 118-19 (Dr. Brode explained the "sustained concentration and persistence capacities and/or limitations" as follows: "reports PTSD-[symptoms] while counseling troubled teens. [R]eports [history of] depression & anxiety & [history of] abuse as a child. [M]ay have some difficulties [with] consistent work for anything more than semi-skilled (3-4 step) tasks"). Consistent with Dr. Brode's assessment, the ALJ found Plaintiff experienced moderate limitations in the functional area of "concentration, persistence and

---

[4] Plaintiff argues the ALJ failed to acknowledge she received accommodations while in school, and sought to take a break from school and to reduce her hours at work. Pl.'s Mot. at 7. The fact Plaintiff was able to work and go to school with accommodations does not establish she cannot engage in work of any type. The ALJ did not find Plaintiff could perform her past relevant work as a counselor, but rather that she could perform less than the full range of light work, and included non-exertional limitations that reflected Plaintiff's limitations in social interaction and concentration, persistence, or pace.

19

pace" and accommodated that limitation by limiting Plaintiff to simple, repetitive tasks. AR 15. The RFC the ALJ adopted limits Plaintiff to simple, repetitive tasks, and to occasional contact with co-workers and the public. AR 16. Far from ignoring Dr. Brode's findings regarding Plaintiff's difficulties with consistent work, the ALJ adopted the limitations Dr. Brode assessed in full. Those limitations are also consistent with the opinions of Dr. Danzig and Mr. Jacobs, who agreed Plaintiff would have difficulty performing her current work as a counselor, but did not opine Plaintiff's conditions prevented her from performing any type of work. *See* AR 520 (Mr. Jacobs: DOR "will work with [Plaintiff] on disability or finding a less stressful work situation."); AR 532 (Dr. Danzig: "These findings clearly contraindicate her returning to human services or any job which requires her to work in a close interdependent manner with others.").

## CONCLUSION

The ALJ applied the correct legal standard, and her decision was supported by substantial evidence. The Court accordingly **DENIES** Plaintiff's Motion for Summary Judgment and **GRANTS** Defendant's Cross-Motion for Summary Judgment. The Court will enter a separate judgment.

**IT IS SO ORDERED.**

Dated: November 29, 2017

_____
MARIA-ELENA JAMES
United States Magistrate Judge